IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CHRISTOPHER HALE SCHIEFER

    Plaintiff,                                OPINION & ORDER

    v.                                         13-cv-190-wmc

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

    Defendant.

---

Pursuant to 42 U.S.C. § 405(g), plaintiff Christopher Hale Schiefer seeks judicial review of the Commissioner of Social Security's final determination that he was not disabled within the meaning of the Social Security Act. Schiefer contends that a remand is warranted for further findings because: (1) the questions posed to the vocational expert as framed by the administrative law judge ("ALJ") failed to address his mental limitations regarding concentration, persistence and pace; and (2) the ALJ provided a flawed credibility assessment. For the reasons set forth below, the case will be remanded to the Commissioner for rehearing.

**FACTS**

**I.    Background**

On July 6, 2010, Schiefer's initial applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") were denied. (AR 30.)[1] In both applications, Schiefer alleged disability began on April 3, 2010. (AR 30.) After his

---

[1] The citations in the Order are drawn from the Administrative Record ("AR"). (Dkt. #8.)

applications were again denied upon reconsideration, Schiefer filed a written request for hearing on November 19, 2010. Almost one year later, on November 10, 2011, Administrative Law Judge Gregory M. Hamel held a video hearing. (*Id*.) On January 18, 2012, the ALJ issued a decision finding that Schiefer was not disabled within the meaning of the Social Security Act from April 3, 2010, through the date of that decision. (AR 40.) This decision became final when the Appeals Council denied Schiefer's request for review. (AR 1-5.) On August 1, 2013, Schiefer filed a timely complaint for judicial review in this court pursuant to 42 U.S.C. § 405(g).

II.     **Relevant Medical Evidence**

Schiefer's detailed medical history from 2006 through 2011 is summarized in his brief. (Pl.'s Opening Br. (dkt. # 12) 2-5.) As early as 2006, Schiefer was diagnosed with a learning disability and ADHD. (AR 410.) By 2009, Schiefer was diagnosed with mood and probable bipolar disorders, as well as probable social anxiety disorder. (AR 471.) By 2011, Schiefer was assessed as also having depression, anxiety, chronic tension headaches, central sleep apnea, and obesity. (AR 613.) Schiefer does not take issue with the ALJ's findings with respect to his alleged physical disabilities.[2] What is in issue is the ALJ's findings with respect to Schiefer's alleged mental limitations, particularly as to evidence pertaining to Schiefer's limitations for concentration, persistence and pace ("CPP"). With the exception of Dr. Bauer's and Dr. Bellak's opinions, each of the following medical opinions was addressed in the ALJ's decision. (AR 32-40.)

---

[2] *See Skarbek v. Barnhart*, 390 F.3d 500, 505 (7th Cir. 2004) ("Because Skarbek did not raise these arguments previously, he waived the opportunity to raise them on appeal."); *United States v. Turner*, 203 F.3d 1010, 1019 (7th Cir. 2000) (arguments not raised until reply brief are waived).

### A. Dr. L. Beth Cummings, Psy.D.

On November 21, 2006, Schiefer presented before Dr. Beth Cummings, Psy.D., for a consultative evaluation regarding his mental limitations. (AR 407.) Dr. Cummings diagnosed Schiefer with a learning disability and ADHD. (AR 410.) At that time, Dr. Cummings also found that Schiefer had the following work capacity:

> He would have difficulty understanding, remembering, and carrying out simple instructions. He would be easily distracted. He would have trouble concentrating. He would get confused if he needed to adapt to changes. He would have difficulty with tasks requiring speed. He would need to ask directions repeatedly. He may have interpersonal difficulties because of his social awkwardness and difficulty catching on.

(AR 410.) Dr. Cummings noted that Schiefer may benefit from the services of the Department of Rehabilitation Services. (AR 410.) The ALJ cited to Dr. Cummings's opinion in his decision, but did not indicate how much weight he gave to her opinion.[3] (AR 37-38.)

### B. Dr. Keith Bauer, Ph.D.

On April 27, 2007, State agency psychologist, Dr. Keith Bauer, Ph.D., found that Schiefer had moderate difficulties in maintaining concentration, persistence and pace. (AR 435.) Further, Dr. Bauer concluded that Schiefer was moderately limited in his ability to: (1) carry out detailed instructions; (2) maintain attention and concentration

---

[3] As has been made clear in 65 FR 11866-02, "[i]n paragraph 20 C.F.R. § 416.927 . . . We are also clarifying that administrative law judges are required to explain in their decisions the weight given to any opinion of a State agency medical or psychological consultant or other program physician or psychologist, as they must do for any opinions from treating sources, nontreating sources, and nonexamining sources who do not work for us." (emphasis added.)). An ALJ must explain his or her analysis of the evidence with enough detail and clarity to permit meaningful appellate review. *See Herron v. Shalala*, 19 F.3d 329, 333-34 (7th Cir. 1994).

for extended periods; (3) complete a normal workday and workweek without interruptions from psychologically based symptoms; and (4) perform at a consistent pace without an unreasonable number and length of rest periods.  (AR 439-40.)  Nevertheless, Dr. Bauer concluded that Schiefer was not significantly limited in his ability to: (1) carry out very short and simple instructions; (2) perform activities within a schedule; (3) maintain regular attendance; (4) be punctual within customary tolerances; (5) sustain an ordinary routine without special supervision; (6) work in coordination with or proximity to others without being distracted by them; and (5) make simple work-related decisions.  (AR 439.)  As noted however, the ALJ did not cite to Dr. Bauer's opinion in his decision.

### C. Dr. Jason Bellak, MD

One of Schiefer's treating physicians, Dr. Jason Bellak, examined Schiefer on June 2, 2009.  (AR 470.)  At the time, Dr. Bellak noted that Schiefer "has a long history of difficulty concentrating and staying on task.  He has had difficulties for some time sleeping regularly and can stay up all night."  (AR 470.)  Dr. Bellak continued to treat Schiefer for more than a year, through August 29, 2010, treating him for a variety of issues including his mood.  (AR 592-93.)  Issues regarding concentration were not addressed during later treatment visits.  (AR 592-93.)  The ALJ also did not cite to Dr. Bellak's opinion in his decision.

### D. Dr. Douglas Varvil-Weld, Ph.D.

On July 10, 2009, Schiefer presented before Dr. Varvil-Weld for a consultative examination regarding his mental limitations.  (AR 482.)  Dr. Varvil-Weld noted

Shiefer's prior diagnoses with a learning disorder and his suspected bipolar disorder, as well as the diagnostic possibility of a depressive disorder of mild to moderate severity. Dr. Varvil-Weld noted that Schiefer "may have some difficulty understanding or remembering complex instructions." (AR 485.) The ALJ cited to Dr. Varvil-Weld's opinion, but did not indicate how much weight he gave the opinion. (AR 34.)

### E. Dr. Eric Edelman, Ph.D.

On July 7, 2010, Dr. Eric Edelman, a State agency psychologist, concluded that Schiefer had moderate difficulties in maintaining concentration, persistence, or pace. (AR 571.) Even so, Dr. Edelman found that Schiefer was not significantly limited in his ability to: (1) carry out very short and simple instructions; (2) carry out detailed instructions; (3) sustain an ordinary routine without special supervision; and (4) make simple work-related decisions. (AR 575.) However, Dr. Edelman found that Schiefer *was* moderately limited in his ability to: (1) maintain attention and concentration for extended periods; (2) perform activities within a schedule; (3) maintain regular attendance; (4) be punctual within customary tolerances; (5) work in coordination with or proximity to others without being distracted by them; (6) complete a normal workday and workweek without interruptions from psychologically based symptoms; and (7) perform at a consistent pace without an unreasonable number and length of rest periods. (AR 575-76.)

In Dr. Edelman's summary, he indicated that Schiefer "has struggled with learning and pace in some factory jobs, but was able to sustain work on [a] dairy farm for quite a while and lost that job only due to tardiness." (AR 577.) As a result, Edelman opined

5

that Scheifer "[s]hould be capable of meeting basic demands of unskilled work." (*Id*.) The ALJ indicated in his decision that he gave this opinion weight with respect to Dr. Edelman's findings of moderate limitations in CPP.[4] (AR 38.)

### F. Kelly Anu, NP

From January through March 2011, a treating nurse practitioner, Kelly Anu, diagnosed Schiefer with sleep apnea, obesity, chronic headaches, bipolar disorder, and depression with anxiety. (AR 611-24.) On April 18, 2011 Anu estimated that he would be absent from work less than one day per month due to sleep apnea. (AR 649.) The ALJ purported to give Anu's opinion "great weight," noting that it "is not from an acceptable medical source, but Nurse Anu is familiar with the claimant, and the opinion is consistent with the record viewed as a whole." (AR 38.) The only part of Nurse Anu's opinion referenced in the ALJ decision, however, is her estimate of the amount of time Schiefer would be absent from work due to sleep apnea. (AR 38.)

### G. Dr. Randall Cullen, MD

Beginning in May 2011, Schiefer sought treatment from Dr. Cullen at Adams County Health & Human Services Department. (AR 704.) After Schiefer's initial appointment, Dr. Cullen concurred with diagnoses of ADHD, major depression, and generalized anxiety disorder. (AR 710.) On July 28, 2011, Dr. Cullen also noted

---

[4] On a prior occasion, July 16, 2009, Dr. Edelman found that Schiefer had only mild difficulties in maintaining concentration, persistence, or pace. (AR 496.) A fair reading of the ALJ's decision and the evidence in the record, suggests the ALJ likely afforded greater weight to this latter opinion of July 7, 2010, than to the first, not only because it was the more recent assessment of Schiefer's limitations, but also because it is more consistent with the CPP limitations of other medical opinions.

6

attention and memory issues, but that formal testing should be done for the latter. (AR 717-18.) Dr. Cullen last saw Schiefer in September 2011, at which point Cullen noted that Schiefer was responding well to the antidepressant medication he prescribed. (AR 713.)

The ALJ also gave "great weight to the treatment notes from Dr. Cullen….because they are from an acceptable medical source that is familiar with the claimant. Further, they show the most recent portrait of the claimant's mental impairments." (AR 38.)

### III. ALJ Decision

On January 18, 2012, the ALJ found that Schiefer had not engaged in substantial gainful activity since April 3, 2010, the alleged onset date. (AR 32.) The ALJ also found the following "severe" impairments: "obesity, obstructive sleep apnea with headaches and excessive somnolence, bipolar disorder with major depression and social anxiety disorder, and a learning disability with attention deficit hyperactivity disorder ("ADHD")." (AR 33.) Despite these challenges, the ALJ found that Schiefer's combined impairments did not meet or medically equal an impairment set forth in the Listing of Impairments. (AR 33.)

With regard to his obstructive sleep apnea, the ALJ found that "objective medical evidence failed to establish that his impairment resulted in clinical evidence of cor pulmonale with a mean pulmonary artery pressure greater than 40 mm HG, or arterial hypoxemia, either of which are necessary to meet or medically equal listing 2.10." (AR 33.) With regard to the mental listings, the ALJ found mild restrictions in the activities of daily living and moderate limitations in social functioning. (AR 33-34.) With regard

to CPP, the ALJ found that Schiefer had moderate difficulties. (AR 34.) The ALJ also noted that Schiefer was in special education classes throughout school, but that "there were no specific concentration deficits noted during the claimant's consultative examination with Douglas Varvil-Weld, Ph.D." (AR 34.)

The ALJ ultimately determined that Schiefer had the Residual Functional Capacity ("RFC") to perform "a full range of work at all exertional levels but with the following non-exertional limitations: he cannot work in hazardous environments, and he can only do routine and repetitive tasks that do not require more than occasional public contact." (AR 36.) At step four, the ALJ determined that Schiefer had no past, relevant work. (AR 38.) At step five, the ALJ relied upon a vocational expert's opinion that given the claimant's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that the claimant could perform. (AR 39.) Accordingly, the ALJ found that Schiefer was not under a disability as defined in the Social Security Act. (AR 40.)

## OPINION

### I. Standard of Review

When a federal court reviews a final decision by the Commissioner of Social Security, the Commissioner's findings of fact are "conclusive," so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When reviewing the Commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the

evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

Even so, a district court may not simply "rubber-stamp" the Commissioner's decision without a critical review of the evidence. *See Ehrhart v. Sec'y of Health and Human Servs.*, 969 F.2d 534, 538 (7th Cir. 1992). A decision cannot stand if it lacks evidentiary support. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). The ALJ must also explain his "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Id.; see Herron v. Shalala*, 19 F.3d 329, 333–34 (7th Cir. 1994). When the administrative law judge denies benefits, he or she must "build a logical and accurate bridge" from the evidence to his conclusion. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

## II. The ALJ Failed to Account for Schiefer's CPP Limitations

Hypothetical questions posed to the vocational expert ("VE") "ordinarily must include all limitations supported by medical evidence in the record." *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002); *see also Kasarsky v. Barnhart*, 335 F.3d 539, 544 (7th Cir. 2003). Here, Schiefer contends that the ALJ erred by failing to accommodate adequately for his moderate limitations in CPP in formulating the hypothetical questions posed to the VE. During the hearing, the VE considered several hypothetical questions. Two of which were posed by the ALJ and one of which was posed by Schiefer's attorney. The first question was essentially framed by the ALJ as follows:

> I'd like you to assume someone who has no specific external restrictions, but cannot work in hazardous environments,

> included in this would be working at heights or around dangerous machinery, but not including things like driving or riding in a car or being in the kitchen and doing things around the house ordinary things around the kitchen, for example mowing a lawn. I'm thinking of greater degree of hazard. **And let's also assume someone who can do only what I would describe as routine and repetitive tasks. But by this I don't just mean tasks that have one or two steps, they might have more than that. The steps may be in addition to that, provided the steps are not complicated or hard to remember, or would not include a lot involved written or oral instructions.** And let's also assume that this person cannot do tasks requiring more than occasional interaction with the public either by phone or in person. With these restrictions in mine, are you able to identify any jobs that would accommodate these restrictions? And if so, can you give examples?

(AR 73 (emphasis added).) In response to this hypothetical, the VE indicated that "laborer" jobs (for instance salvage work) would be available for an individual with those limitations. (AR 73-74.)

The ALJ then asked the VE to consider a second hypothetical:

> I'd like you to assume someone who can do the functions that I mentioned in the first question, but cannot do them reliably due to interruptions; interruptions could be caused by psychological issues or other factors. During these periods of interruptions, the person would essentially be off task even for the performance of simple tasks. And if you assume someone was off task say about a fourth of the day or more, could he or she do the job you mentioned in the first question or any other job?

(AR 75-76.) In response to this second hypothetical, the VE stated, "No, Your Honor." (AR 76.)

Schiefer's attorney then asked the VE to consider yet another hypothetical:

10

> Hypothetical number three is the following. No exertional limitations, all right, but this individual is limited to routine repetitive type work, at most, two to three steps. But that this individual by history and level of skill consistently performs at a rate of about 10 to 15 percent below other employees doing the same job. In other words, his work pace is 10 to 15 percent below what other employees doing that job. Would there be any work available?

(AR 76.) In response to this hypothetical, the VE replied, "Generally, an employer will allow five to 10, but once you're going from 10 to 15 percent, especially an assembly or those types of jobs, there wouldn't be any work available, or that would exist, excuse me." (AR 76.)

Given that the ALJ only relied on the VE's response to the first question, Schiefer's contention that the ALJ ignored limitations in CPP certainly appears to be accurate. Indeed, this deficiency closely tracks that noted in the Seventh Circuit's decision in *O'Connor–Spinner v. Astrue*, 627 F.3d 614 (7th Cir. 2010), which definitively held that "among the limitations the VE must consider are deficiencies of concentration, persistence and pace." *Id*. at 619. In *O'Connor–Spinner,* an ALJ concluded the claimant had moderate limitations in CPP because of her depression, but only asked the VE to consider only a "hypothetical worker [who] was restricted to routine, repetitive tasks with simple instructions." 627 F.3d at 617. On appeal, the Seventh Circuit rejected the Commissioner's argument that the limitation to routine and repetitive tasks "implicitly incorporated" limitations for CPP because "[t]he ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *Id.* at 620. The court of appeals further noted that limiting the

11

hypothetical worker to routine repetitive tasks did not "adequately orient the VE to the totality of a claimant's limitations." *Id.*

While some exceptions exist to the general rule, the Seventh Circuit directed the ALJ in *O'Connor-Spinner* to refer "expressly to limitations on concentration, persistence, and pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do." *Id.* at 619-20. Moreover, the Commissioner raises none of the exceptions recognized in *O'Connor–Spinner* in this case, likely because none apply.[5] Having failed to argue an exception, the Commissioner has effectively waived them. Finally, consistent with the ALJ's express findings to the same effect (AR 34), the Commissioner effectively concedes and the court finds that there is substantial medical evidence in the record to support the existence of plaintiff's moderate limitations in CPP.[6]

"As a general rule," and as previously noted in this opinion, "both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the

---

[5] The exceptions include: "(1) where the record revealed that the VE had reviewed the claimant's medical records or heard testimony about the limitations; (2) where the ALJ used alternative phrasing and "it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform; or (3) where the ALJ's hypothetical question specifically mentioned the underlying condition that caused the difficulties with concentration, persistence, and pace." *O'Connor–Spinner*, 627 F.3d at 619–20.

[6] State agency psychologist Dr. Edelman found that Schiefer was moderately limited in his ability to: (1) maintain attention and concentration for extended periods; (2) perform activities within a schedule; (3) maintain regular attendance; (4) be punctual within customary tolerances; (5) work in coordination with or proximity to others without being distracted by them; (6) complete a normal workday and workweek without interruptions from psychologically based symptoms; and (7) perform at a consistent pace without an unreasonable number and length of rest periods. (AR 575-76.)

claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014) (citing *O'Connor-Spinner*, 627 F.3d at 619). In this case, neither the ALJ's RFC assessment nor the first hypothetical posed to the VE properly incorporated Schiefer's moderate limitations in CPP. Tellingly, to the extent the second and third hypotheticals arguably *do* account for limitations in CPP, the VE's responses to them appear on their face to suggest disability. For instance, the second hypothetical incorporated periods of interruptions and being off task, and the third hypothetical incorporated a reduction in pace.[7] (AR 75-76.) The Commissioner concedes as much, arguing only that the ALJ's findings and the record itself may not support the *extent* of limitations included in at least the second hypothetical. (Br. in Opposition (dkt. # 16) 6.) While a close call, this argument is probably enough to prevent an outright grant of disability benefits to Schiefer permissible under the statute, but essentially compels a remand to determine the extent to which limitations as to CPP should have been included in the ALJ's determination of Schiefer's RFC and related hypotheticals to the VE.

On remand, the ALJ will also need to explain why he ultimately disregarded the second and third hypotheticals. Certainly, the fact that the ALJ considered both suggests

---

[7] Schiefer acknowledges in a convoluted way in his Opening Brief that the second and third hypotheticals included limitations in staying on task and maintaining pace. (Pl.'s Opening Br. (dkt. # 12) 26-27.) The Commissioner likewise acknowledges the inclusion of some limitations in CPP in the second and third hypotheticals in its Brief in Opposition. Although the Commissioner then argues unconvincingly that the second hypothetical accommodates more limitations than the record supports, the Commissioner offers no meaningful response to the ALJ's failure to consider the third hypothetical's inclusion of limitations in CPP. (Br. In Opposition (dkt. # 16) 6-7.)

there was at least some evidence to support them, especially with respect to the second hypothetical since the ALJ asked the hypothetical himself. (AR 75-76.) In determining the degree of these limitations on remand, the ALJ should also consider whether the combination of sleep apnea and limitations in CPP would lead to absenteeism of one or more days per month. As Nurse Anu's opinion indicates, Schiefer's sleep apnea alone could lead to some level of absenteeism from work each month. (AR 649.) A finding should be made on whether the impairments in combination have a cumulative effect, particularly given that Nurse Anu's evidence was afforded great weight by the ALJ. (AR 38.)

In addition, the ALJ's decision does not provide a full and clear discussion of the weight given to all medical opinions cited, nor does it indicate why certain medical opinions were ignored altogether.[8] Each of these deficiencies, too, warrant remand because the ALJ has either (1) failed to explain inconsistencies in the record; or (2) failed to develop the record altogether. *See Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000) ("[a]lthough a claimant has the burden to prove disability, the ALJ has a duty to develop a full and fair record"); *see also Richards v. Astrue*, 370 F. App'x. 727, 731 (7th Cir. 2010) ("an ALJ may not draw conclusions based on an undeveloped record and has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable"); *Smith*, 231 F.3d at 437 ( "failure to fulfill this obligation is 'good cause' to remand for gathering of additional evidence").

---

[8] The ALJ considered medical opinions from both before and after the alleged onset date, but without explanation, chose not to consider some medical opinions in the record. Further, the ALJ gave no guidance as to whether pre-onset reports were inconsistent with post-onset evidence.

On remand, the ALJ will need to make express findings and incorporate plaintiff's moderate limitations in CPP into an RFC determination, and then *accurately* translate those limitations in questions posed to the VE.[9]  Only then can this court meaningfully review any determination as to whether there are jobs available that Schiefer could undertake.

### III. Credibility Assessment

In addition to arguing that the ALJ failed to address his mental limitations regarding CPP, Schiefer argues that the ALJ provided a flawed credibility assessment. Credibility is typically the province of the ALJ. *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000). An ALJ's credibility determination is "afforded special deference" because the ALJ is in the best position to see and hear the witness, both of which are key components in assessing credibility.  *Id*.  For this reason, the court will only overturn an ALJ's credibility determination if it is "patently wrong." *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003).  Given that remand is required, the ALJ may find that Schiefer's credibility is bolstered once the issue of his CPP limitations have been properly addressed. Because of this, the court declines to address the ALJ's past credibility determination.[10]

---

[9] To this end, the ALJ would be well served to review the Seventh Circuit's recent *Yurt* decision. *See Yurt v. Colvin*, 758 F.3d 850, 857-58 (7th Cir. 2014) (rejecting Commissioner's argument that the ALJ's failure to mention six moderate CPP limitations that the state agency psychologist found moderate limitations for was remedied by translating these limitations into what basically amounted to "unskilled" work).

[10] Schiefer also challenges the ALJ's decision for failing to adequately consider and address Schiefer's ability to transition into sustained work at step five of the sequential process. Because

## ORDER

IT IS ORDERED that the decision of defendant Carolyn W. Colvin, Commissioner of Social Security, denying plaintiff Christopher Schiefer's application for disability benefits is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.  The clerk of court is directed to enter judgment for plaintiff and close this case.

Entered this 27th day of March, 2015.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

---

the outcome of this issue may also hinge on the reconfiguration of the RFC assessment (and questions posed to the VE), the court similarly declines to rule on this issue at this time.